The next matter, number 24-1414, Elizabeth F. Warner v. Louis DeJoy. At this time, would counsel for the appellant please introduce himself on the record to begin? May it please the Court, my name is Mark Whitney. I'm counsel for the appellant Elizabeth Warner in the courtroom with us today. Before I go on, can I please reserve three minutes for a potential rebuttal? You may. Your Honors, I'd like to focus, because of the limited time we have, my argument on the primary area that we see below, and that is that the lower court relied on the credibility of one key witness in entering summary judgment and dismissing Ms. Warner's case. And in so doing, the court essentially acted as a fact finder and ignored evidence that was presented that could have created inferences that would give Ms. Warner the opportunity to present her case to a jury and have a jury of her peers hear her claims. The entire case revolves around the credibility of this one witness, a woman named Kathleen Hayes, and the motivation and the intent of Ms. Hayes. And we submit respectfully that the lower court really turned Rule 56 on its head in its order. With regard to the first point, I should first just review two key facts. There were two promotions at issue here. The second promotion, which was in August of 2018, in the middle, this is undisputed, but in the middle of this interview, Ms. Hayes, the interviewer and decision maker, said, I don't think we've ever had a woman postmaster in Summersworth, New Hampshire. And I'm not sure how that would work. She said that in the interview to Ms. Warner. Counsel, I'm not sure that that's direct evidence of discrimination. It may just be a statement of fact. But let me tell you what bothers me. When we look at the record, what we find is that the Postal Service has said, as to the second position, three applicants were interviewed, including the guy who got the job, David Adams, I believe. But when we, and the Postal Service has said, and so out of those interviews, the three were compared, and we chose Adams because he was better. But the record shows that Adams was not, in fact, interviewed. There's an email that makes it rather clear that Hayes did not, quote, interview him for the job, although she represented to the court that she had interviewed him. The other thing that bothered me was under the Postal Service regs, if you interview people, there ought to be interview notes. And we looked through the record, and we couldn't find any interview notes of the three people. So, you know, I suppose a jury could say, hey, the reason given has been undercut by the record evidence, and from that, we think that the reason given was pretext, and that makes us wonder about what was really going on. Thank you, Your Honor, for making my case. Well, no, in fact, I wish you had pointed out in your briefs the very thing I just pointed out to you, but you did not. Well, Your Honor, we do point out that with regard to this process, with regard to Mr. Adams, and again, this is the second promotion, right, that absence of records, absence of the applicant matrices and interview notes we submit is a potentially spoliation issue because it hasn't been produced. Okay, let me ask this question. Okay, so maybe the second denial of promotion, there's a jury question there. How does that affect the first denial of promotion? Just if I could take two seconds and stay on your first question, Your Honor, and I'll get to the second. But I believe the record reflects that Ms. Hayes testified that she did speak with Mr. Adams in her deposition. She used the term, I interviewed him for the job. I'm not sure that she used the term interviewing, but I know that she did say that she didn't discuss certain things with Mr. Adams that she did press on Ms. Warner, for example. She did admit in her deposition that she didn't have any concerns about his energy and she didn't talk about his energy in the interview. So the fact that maybe there's no reference to it, but we did talk about it in our brief that she did not ask you. Can you now answer my question?  I believe your second question was how the second promotion denial relates to the first. No, it was if, in fact, you have enough to get to a jury on the second, does that mean you have enough to get to the jury on the first? Well, Your Honor, I think they're essentially two distinct claims. And I think we have enough inconsistencies in facts from which you can draw inferences in Ms. Warner's favor that weren't addressed by the lower court with regard to the Minigan selection. So I think they're separate in that regard. I thought you were going to say it was just a couple months later. It's the same decision maker. So if she's lying about the second, why isn't she lying about the first? Right. And the statements made in the Adams, excuse me, the Summersworth interview, which is the second one, about energy and there hasn't been a woman, I wonder how that would work. Those are the statements that triggered in Ms. Warner's mind, oh, my gosh, I just had an interview with her about this other position where she gave it to the 36-year-old guy. And that's why you're saying your complaint is timely as to the first one, because she didn't realize until she lost the second job that discrimination was at play here. Right. As Judge Selya has put it, she didn't. It crystallized the invidious ideology of the decision in the first. He's quite a wordsmith, isn't he? I always have a dictionary nearby when I read his opinion. Counsel, can I, asking you about the first hiring process, I know you focused on the statements that were made in the second one, and I understand your arguments about those statements very well. What else in the record do you think suggests that the explanation given for the hiring in the first application process was pretextual? I think one of the things I saw in your brief was a discussion that the focus on city delivery experience did not seem supported by the record. Is that your best argument of pretext? Do you have anything else you can point us to? Well, I think as far as pretext goes with regard to the selection of Mr. Minigan, there's a lot of evidence in the record that we argued in our brief that shows that, in fact, Ms. Warner was more qualified than him on the points raised by Ms. Hayes in her declaration. But more specifically, as Judge Rickleman has just pointed out, there is a dispute about urban mail delivery experience. I thought your brief said also there is a dispute about how much general training your client had more. Okay, what else is there? She had 11 more postmaster experience. She had 11 years' experience being a postmaster. She actually was an OIC, which means officer in charge, and that's what they do when the post office puts you in charge of a post office when the postmaster is away. In the office at question for the promotion, the Durham office, she was there already and had been there already. How does that help? Was she the postmistress there?  The OIC is the acting postmaster when there's somebody who has a leave of absence or something like that. Typically, people will be OICs before they become a postmaster. Can I ask you on this issue that we've just been discussing, which is, as I read the briefs, and you can tell me if I'm wrong, the post office says that Ms. Hayes made the first hiring decision because she wanted somebody with city delivery experience and training about city delivery experience, and you say actually the record shows that the candidate she hired doesn't have that experience. Are there documents to that effect? Can you just explain what the state of the record is on those very specific points? For example, Ms. Warner had this certification called the 3999 City Inspection Certification. Mr. Minigan, in his application, it's at page 261 of the Joint Appendix, doesn't list that as part of his qualifications. She had already supervised city routes in three different post offices, as I mentioned with Durham previously, as well as Portsmouth, which is one of the big cities in New Hampshire, and Newmarket, where she was. It's interesting that Minigan had only been a postmaster for less than two years, and the office that he was the postmaster in, Deerfield, didn't even have city delivery routes. And that's at 55 of the Joint Appendix. And is that Ms. Hayes' testimony? Is what you're citing, that's Ms. Hayes' testimony, saying that that post office doesn't have city delivery routes, is that correct? Yes, it's 55 of the record of the Joint Appendix. And is that Ms. Hayes' testimony? If you're not sure, that's okay. I was just trying to understand what it was. I'm pretty sure they were from her deposition. Now, what's also interesting is that when, in her deposition, Ms. Hayes was asked questions about the qualifications of Ms. Warner, she conspicuously didn't answer questions or claimed, I've been retired for two years and it was five years ago, blah, blah, blah. Answers like that, where she's trying to distance herself. And it's important that the court note the clarity of that declaration from July 31st was just two weeks before her deposition. We note many times in our brief the times that she was backtracking and not answering questions and not providing details. It was just two weeks after she signed that thing. Thank you so much, counsel. You have your time for rebuttal. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning, Your Honors, and may it please the Court. Michael McCormick on behalf of the United States. Your Honors, this Court should affirm the District Court's grant of summary judgment to the United States for two reasons. First, because Warner has failed to present any affirmative evidence from which a reasonable jury could conclude that she was the victim of illegal discrimination. And second, because Warner failed to file an EEO complaint regarding her application for the postmaster position in Durham, New Hampshire within the statute of limitations. You've been sitting there listening to our concerns about the case. Would you like to comment, please? It's quite unusual for this Court to be presented with a defense that I interviewed three candidates for the job and based on those interviews I made the selection when we look at the evidence and there was no such interview. Your office apparently didn't catch this discrepancy, but it's there. So could you please start addressing why those things are not evidence of pretext? Certainly, Your Honor. And I would argue what Ms. Warner's counsel said and note that Ms. Hayes in her deposition did indicate that she, excuse me, did state that she interviewed candidates for that second position. I don't know if those were formal postal service interviews or if they were discussions that she had had with an attorney. You and your office have represented in your brief to us that there were three candidates interviewed and it was based on that interview, those three interviews, that the decision was made. Correct. It's not just the postal service. It is your office which has framed the case that way to this Court. Correct, Your Honor. And presumably to the district court. Correct, Your Honor. And it's my belief that those interviews did take place. Even though there is an email in the record that said Ms. Hayes never interviewed the guy who got the job? Your Honor, I cannot explain that discrepancy. Well, isn't that the problem then? Because the issue before us now is not whether the interview took place. The issue for us is whether a jury could find that she gave two flatly inconsistent statements about whether it occurred and therefore whether it played a role in the deciding. And if a jury could find that, then whether they could infer from that that the reason given for the decision was not bona fide. And I'm having trouble seeing how if she's asked on one occasion, why did you hire this other person? And she says he did better in an interview. And then she writes an email to what the government investigator is saying she didn't interview him. Why that wouldn't allow a jury to say that her explanation for why she hired him was false? Well, I think at that point, then the jury would have to consider what evidence there is that it actually was a pretext for illegal discrimination. That's right. And merely prevaricating on some collateral issue is not going to do that. But when it goes to the precise issue of why you hired someone and you give a false, demonstrably false answer on that so the jury could find, that's a pretty big inference to add to the other evidence that might not have otherwise been enough. Are you familiar with our decision in Joseph versus Lincare? Because we had the same issue where the party gave inconsistent explanations in the decision and we found that pushed it over the top that it should go to a jury. Right, but again, I would go back to, and I can't explain the inconsistencies. I apologize for that. But again, I don't think even with those inconsistencies that the evidence is strong enough to get to a jury here. The two comments that are at issue simply aren't enough to infer illegal discrimination. Okay, let's take it step by step. Do you dispute that she has met her burden of getting to a jury simply on the issue of pretext based on inconsistent explanations? Do you dispute that? Because the argument you're making is she needs to show more than pretext. It is her burden at that point to also show discrimination. I believe our law is that once the plaintiff shows pretext, then the burden shifts back to the employer to explain the inconsistency or the pretext. But the ultimate question is discrimination. But our question is going to a jury. And Your Honor, I would agree with your recitation of the law of the circuit. But again, I don't believe that there is sufficient evidence of pretext here to get to a jury as a district court proper. Yes, but you've offered no explanation for the inconsistencies between her statements. Well, Your Honor, I think it's important... It's your burden to show that, to rule out discrimination at that point. Right, we have the burden of producing a valid, non-discriminatory resource for the hiring. Okay, and the one you gave in the briefs, it just went down in flames. No, I don't think it does respectfully, Your Honor. I believe that the individuals hired, there's no dispute about the qualifications of the individuals hired. And it's not illegal for the Postal Service to make an incorrect decision in terms of business judgment as to whether, did Ms. Warner have more experience in this area or did somebody else? And it's not city delivery experience, it's city delivery productivity. Those are two different terms. As the district court recognized, years of experience do not necessarily equal competence. The decision-maker here, it's undisputed, was very familiar with the qualifications of all of the individuals who applied for the positions and made the hiring decision based on her familiarity with those qualifications. And if Ms. Warner believes that she was more qualified for the position or would have done a better job at the position, that doesn't mean that she was discriminated against illegally. I think the evidence that Ms. Warner is relying on here, the two comments at issue, simply aren't enough for a jury to infer that there was illegal discrimination that took place here. We had a comment during the interview process of Ms. Warner where they were discussing what both parties agree was a difficult office to manage in Summersworth, NH. And Ms. Gates said to Ms. Warner, something to the effect of, this is not a direct quote, do you think you have the energy to manage that office? And Ms. Gates admits she was familiar with Ms. Warner's employment history. She was familiar with the history of the Summersworth office, as was Ms. Warner. The question of whether you have the energy to operate that office was a valid question to ask. And this circuit has held on several occasions, as have many other courts, that questions about an individual's energy simply do not arise to the level of discrimination based on age. And along those same lines, the discussion about the Summersworth post office, which had undisputedly always been run by male supervisors, these two individuals in the interviews were having a discussion, and Ms. Gates admittedly says, factually, we have never had a female postmaster in that office. Counsel, I don't think that that's the allegation, that it was just a factual statement, that historically there's never been a woman in that position. I think the statement, and I did check the site, it seems correct, was I don't think we've ever had a woman postmaster in Summersworth. I'm not sure how that would work. So I think it's that second part that's the focus, and that's not just a statement of historical fact, right? Your Honor, first of all, you are correctly reflecting the record. Secondly, I agree with you that that's the portion of the statement that Ms. Warner is taking issue with. Right, that's what she's concerned about, not the historical fact that you were talking about. The Woodward case that we've cited in our brief says that even though the district court is not allowed to make credibility assessments, the district court is allowed to consider the context in which statements are made. And in this case, the context is two individuals, females, discussing the Summersworth postmaster position, and Ms. Hayes saying, yes, we've never had a male there, I'm not sure how it would work. And that doesn't necessarily mean I'm not going to hire a female for that position ever, and I don't think that's the allegation that, or it's certainly not the justification provided by Ms. Hayes. But isn't that suggesting that she's considering exceeding to a biased view of the present incumbent members of that office? I mean, picture this in race terms. She says to an applicant, you know, we've never had a black in that office, I'm not sure how that would work, and then she doesn't pick the person. I think a jury might conclude that the reason she didn't pick him was because a black would have trouble with the incumbent people in that office. And that would be discrimination, wouldn't it? And why is it different here? Well, certainly it would be discrimination if the reason for hiring was because of the race. Right, but once the statement made is in effect saying, I'm not sure I can put you in that office because you're a woman. It's the equivalent of that. Well, that's certainly not what Ms. Hayes said. Well, how is what she said any different than what I just said? Well, Your Honor, the concern at the time that the Summersville Post Office was, as recognized, they had never had a female postmaster. It was a difficult office to operate. I certainly think that the individuals... You mean women would have more difficulty than men? No, no, no, that's not at all my implication. I think that certainly one interpretation of what Ms. Hayes said is perhaps it would be a good idea to put a woman in that office. We've never had one there. Perhaps this would turn things around. But, counsel, isn't that exactly the kind of thing that a jury can decide? To me, the most logical understanding of I'm not sure how that would work indicates a concern about how it would work, a concern that's not being expressed about male applicants. And so I think it would be perfectly reasonable for a jury to conclude she was concerned a woman wouldn't be able to handle the situation, and that's a sign of gender discrimination. I mean, that's not an impossible inference for a jury to draw. Wouldn't you agree? Yes, it's certainly not an impossible inference, Your Honor. And we're not discussing that statement in isolation from all of the other evidence which we have discussed. Maybe standing alone might not be enough, but together with everything else. You keep using the term, it doesn't necessarily mean that she didn't have concerns about a woman being in the office. But that's not the test. Necessarily means is not the test. It's what a jury could conclude from this statement. Correct? Yes, Your Honor. All right. We've been talking, I think, mostly about the Summersworth decision. What do you have to say about the prior decision, which I think was the Durham decision? Yes, Your Honor, it was. Thank you. There's no dispute here that there was no EEO complaint timely filed for the Durham decision, meaning within 45 days of the employment decision. Opposing counsel and Ms. Warner argued that that can be excused because although she knew that she didn't get the Durham decision, she did not know of the alleged discriminatory justification for that until the Summersworth interview. And the case relied on by Ms. Warner-Thomas out of this circuit actually doesn't stand for that proposition. Thomas specifically dealt with whether employment reviews that were done at one point in time and then an ultimate termination based on that review, which of those two events started the statute of limitations block money. And they felt that this court found that it was the latter. It was the termination of the employee, the specific concrete employment action that took place. And the Thomas court addressed the issue of equitable tolling and said some circuits have held that no, if you are terminated but you don't know of the discriminatory basis of that termination until much later, the statute of limitations block doesn't run on the later date unless there's been affirmative misrepresentation by the employer as to the reasons for the employment action. And we don't have any of those affirmative misrepresentations here. This court has held that if you were to allow those claims to stay open until the later discovery of discriminatory intent, that leaves the claims in a state of what this court called suspended animation. And arguably those claims could be sitting there for years until an employee learns later that they have discovered a discriminatory intent which would then go back in time and reopen all those cases. And we respectfully would argue that that's the very purpose of the statute of limitations. The district court said, you know, that's a really tough issue, so I'm just going to bypass it and then got to the issue of the first promotion. How about two sentences about why the first promotion issue doesn't get to the jury? Deal with the merits as opposed to the timing. It almost sounds like you've given up on the merits. No, Your Honor. I don't think there's any concrete evidence at all that the first decision was based on anything that was discriminatory. We haven't given it that. All right. Thank you, counsel. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself back on the record? He has a three-minute rebuttal. Thank you. May the police court mark Whitney for Elizabeth Warner. Your Honors, I really would like to just touch on one point. Prior to the argument and after our reply brief was submitted, this court issued the Burgess v. Florian case, and we submitted a Rule 28J letter into the docket. I just wanted to call it to your attention because one of the biggest issues here, because there's a lot of issues of truthfulness and backtracking and deposition and such that's tracked in our brief, of the primary witness. But one of our biggest issues here is that this witness and her employer sought to submit a materially false statement to the court in support of the summary judgment motion in an affidavit, excuse me, a declaration that was not sworn under the penalty of perjury like you normally do. I've never seen a declaration submitted in support of summary judgment that doesn't have the jurat. We actually didn't even notice it at the outset. It doesn't really matter whether she signed it or not. The issue isn't perjury. The issue is the statement and whether that amounts to some evidence to help your case. Sure, exactly. In the Burgess case, which was October 22nd, that involved state security law issues. But this court in that case found that the trial court in that case had abused its discretion by not permitting cross-examination into a witness about their character for truthfulness with regard to lies that that person had allegedly stated concerning their qualifications and such. So this court stated that this could have impacted a reasonable juror's evaluation of trial evidence and credibility. In the Burgess case, the lie was to other people, to the marketplace. Here, the lie was to the district judge. And that's, to me, I've never seen anything like it. And this is something that a jury could be greatly influenced by, that this witness was willing to do that and her employer was willing to do that when they knew it was false. The only reason we found out about it is because Ms. Warner, in a Zoom meeting, happened to see a shared screen of Ms. Hayes that had an Outlook email folder that had seven cases listed under the topic EEO. And Ms. Warner snapped a photo of it sitting at home in the Zoom shared screen. And that's the only reason that we knew about that. What would have happened if we didn't know about that and followed up on it? Thank you, counsel. Thank you, counsel. That concludes argument in this case.